IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joseph Linen, <br><br> Plaintiff, <br><br> v. <br><br> LVNV Funding LLC and Resurgent Capital Services LP, <br><br> Defendants. | Case No. 23 C 4470 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Joseph Linen sued Defendants LVNV Funding LLC and Resurgent Capital Services LP (collectively, "Defendants") for alleged violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") (Count I); the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA") (Count II); the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.* ("FCRA") (Count III); the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") (Count IV); the Illinois Collection Agency Act, 205 ILCS 470 ("ICAA") (Count V); and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 ("ICFA") (Count VI). Defendants filed an answer [19] to Counts III, IV, and VI of Plaintiff's Amended Complaint and moved to dismiss [17] Counts I, II, and V for failure to state a claim. For the reasons discussed below, Defendants' partial motion to dismiss [17] is granted.

## BACKGROUND

The facts are taken from Plaintiff's amended complaint concerning Defendants' efforts to collect an alleged debt and Plaintiff's request for verification of such debt. Specifically, on January

1

21, 2023, Defendants sent a letter to Plaintiff claiming that he had an account with Defendants.[1] On February 6, 2023, Plaintiff responded and asked Defendants for proof of a contract with Plaintiff or other documentation reflecting the terms and conditions applicable to the debt. Defendants responded on February 14, 2023; however, Plaintiff contends their response did not contain a contract or anything else reflecting the terms and conditions of the debt. On February 27, 2023, Plaintiff sent another letter asking for documentation showing that Plaintiff was obligated to pay Defendants. On March 10, 2023, Defendants responded, but Plaintiff claims the response again lacked proof that Plaintiff was obligated to pay Defendants. Based on these communications, Plaintiff alleges that Defendants did not have documents evidencing the transfer of the ownership of the debt or a certified or other properly authenticated copy of a bill.

Then, on March 20, 2023, Plaintiff sent a letter to Defendants asking that they cease further communication. Despite this request, Plaintiff alleges that, on March 30, 2023, Defendants sent a duplicate of the March 10, 2023 letter. On April 11, 2023, Plaintiff sent a letter to Defendants informing them that they were in violation of the law and requesting $1,000 in compensation. On April 21, 2023, Defendants sent another duplicate of the March 10, 2023 letter. Thereafter, Plaintiff filed this action alleging violations of various federal and state debt collection and reporting laws. Defendants moved to dismiss certain counts under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed and ripe for ruling.

## **LEGAL STANDARDS**

Rule 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual

---

[1] Plaintiff's complaint does not indicate what sort of relationship, if any, exists between LVNV and Resurgent.

allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principals, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Plaintiff alleges that Defendants violated various debt collection and reporting laws by failing to provide proof of a debt and continuing to contact him regarding such debt after he requested that Defendants cease further communication. Defendants contend that Plaintiff's TILA (Count I) and ECOA (Count II) claims fail because those statutes do not apply to Defendants or their conduct. Additionally, Defendants assert that Plaintiff's ICAA (Count V) claim must be dismissed because the statute does not provide for a private right of action. Having considered the allegations, arguments, and relevant authority, the Court agrees with Defendants and dismisses Count I, II, and V of the Amended Complaint.

### I.      Truth in Lending Act (Count I)

Plaintiff claims that LVNV violated TILA by giving false or inaccurate information and failing to provide information that they were required to disclose under TILA. Defendants counter that this claim must be dismissed because they are not creditors as defined by the Act, and therefore, TILA does not apply to their conduct. In response, Plaintiff argues that, making all

3

reasonable inferences in his favor, LVNV is a creditor because "they are trying to collect a debt from [him]." (Resp. at 3, Dkt. 21).

Only "creditors" are subject to TILA's disclosure provision. *Sweiss v. Ramadani*, No. 15 C 8150, 2016 WL 492370, at *4 (N.D. Ill. Feb. 9, 2016) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1637, 1640). As both parties acknowledge, "TILA defines a creditor as: 'a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable[.]'" *Sweiss*, 2016 WL 492370, at *4 (citing 15 U.S.C. § 1602(g)).

In *Neff v. Cap. Acquisitions & Mgmt. Co.*, the court affirmed the dismissal of plaintiffs' TILA claim because the defendants were not creditors within the meaning of the Act. 352 F.3d 1118 (7th Cir. 2003). There, plaintiffs argued that defendants became creditors when they purchased open credit card accounts for debt collection purposes. The Seventh Circuit disagreed, finding that to meet the definition of a creditor, the defendants "must have either 'issued a credit card' or been the issuer's 'agent.'" *Id.* at 1120 (quoting 15 U.S.C. § 1602(n)). In ruling that defendants did not issue a credit card, the Court of Appeals reasoned that plaintiff "could not go to the store and make a purchase on [defendants'] credit. In fact, the defendants granted [plaintiffs] no credit privileges at all." *Id*. In determining that defendants were also not agents, the Seventh Circuit explained that "[t]o become an agent, there must be an agreement that 'the cardholder may use a line of credit with the financial institution to pay obligations incurred by use of the credit card.'" *Id.* (quoting 12 C.F.R., pt. 226, Supp. I12 C.F.R., pt. 226, Supp. I, ¶ 2(a)(7)). And the fact that the original card issuer had only sold the plaintiffs' accounts was insufficient to deem defendants as agents of the issuer. *Id.* at 1121.

4

The same analysis applies here. Plaintiff does not allege that Defendants regularly extend credit or even that Defendants extended a line of credit to him. *See also DeLeon v. Beneficial Const. Co.*, 55 F. Supp. 2d 819, 829 (N.D. Ill. 1999) (dismissing plaintiffs' TILA claim because they failed to allege that the defendant was a creditor or regularly extended consumer credit). While not explicitly stated, construing the allegations in his favor, Plaintiff does attempt to allege that there was an agency relationship because "LVNV assume[d] the role of the creditor." (Am. Compl., ¶ 16). Plaintiff's allegation, however, does not adequately plead an agency relationship between the unidentified issuer and Defendants. Specifically, Plaintiff does not allege that there was an agreement between the issuer and Defendants. *See id.* Quite the opposite, Plaintiff alleges that Defendants do not have documents establishing transfer of ownership of the debt. Accordingly, Plaintiff's TILA claim is dismissed due to his failure to allege that Defendants are creditors within the meaning of the statute.

## II.     Equal Credit Opportunity Act (Count II)

"The ECOA makes it illegal for creditors to 'discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race.'" *Swanson v. PNC Bank*, N.A., No. 20 C 6356, 2021 WL 1209131, at *3 (N.D. Ill. Mar. 31, 2021) (quoting 15 U.S.C. § 1691(a)(1)). Though the allegations related to the Plaintiff's ECOA claim consist only of quotations from the statute, the basis for Plaintiff's claim appears to be that LVNV discriminated against him because he exercised his rights under ECOA. Defendants assert, though, that Plaintiff does not allege he was an applicant.

"[T]he ECOA defines credit 'applicant' as 'any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit.'" *Head v. N. Pier Apartment Tower, a/k/a Broadacre Mgmt.*, No. 02 C 5879, 2003 WL 22127885, at *2 (N.D.

5

Ill. Sept. 12, 2003) (quoting 15 U.S.C. § 1691a(b)). In his response, Plaintiff quotes this definition but does not explain how he qualifies for relief under ECOA. Instead, Plaintiff states that "the fact that this case is even in front of a federal judge is proof that the plaintiff has been treated less favorably because of his race." (Resp. at 6).

Contrary to Plaintiff's belief, the case law demonstrates that Plaintiff is not an applicant under ECOA. *See, e.g., Fralish v. Bank of Am., N.A.*, No. 20 C 418, 2021 WL 4453735, at *3 (N.D. Ind. Sept. 29, 2021) (existing account holders were not "applicants" within the plain meaning of ECOA because they were not applying for an extension, renewal, or continuation of their existing credit when the alleged violation occurred). Absent any allegations that he applied for a credit extension, renewal, or continuation, Plaintiff cannot demonstrate that ECOA applies to Defendants' conduct. Accordingly, Plaintiff's ECOA claim is dismissed.

### III.     Illinois Collection Agency Act (Count V)

Plaintiff alleges that Defendants violated § 9.2 (c) of the ICAA by sending four letters to Plaintiff after Defendants were in receipt of his cease communication letter. Defendants argue that there is no private right of action for an individual to bring a claim under the ICAA in a civil proceeding. In response, Plaintiff contends that a private right of action can be implied without specific legislative intent if a private right of action achieves the underlying purpose of the Act. (*See* Resp. at 8) (citing *Trull v. GC Servs. Ltd P'ship*, 961 F. Supp. 1199, 1206-07 (N.D. Ill. 1997)).

The Illinois Supreme Court has not squarely decided whether a private right of action exists as to § 9 of the ICAA. *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *16 (N.D. Ill. Mar. 30, 2017). The plaintiffs in *Eul* relied on *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (1st Dist. 1979) to argue that an implied private right of action exists to pursue violations of § 9 of the ICAA. 2017 WL 1178537, at *16-17. But the court found that *Sherman* was not controlling and there were "numerous persuasive indications that the Illinois Supreme Court would depart from

6

*Sherman*." *Id.* at 16. The court provided a detailed analysis explaining its holding that no implied private right of action exists under § 9 of the ICAA. *Id.* at 17-19.

First, the court noted that *Sherman* was decided nearly 40 years ago and no Illinois appellate decision before or since has found, applied, or even mentioned an implied private right of action under § 9. *Id.* at 17. Additionally, Illinois circuit courts have frequently declined to follow *Sherman* and dismissed private actions seeking to enforce provisions of the ICAA. *Id.* at 17, n. 14 (collecting cases). Second, the court explained that § 9 of the ICAA expressly authorizes both the Illinois Department of Financial and Professional Regulation and the Illinois Attorney General to pursue violations, and "when a statute grants a state official broad authority to enforce the statute . . . it indicates the legislature's intent not to imply a private right of action for others to enforce the statute." *Id*. (citing *Metzger v. DaRosa*, 209 Ill.2d 30, 42) (2004). Third, the court also explained that the ICAA expressly adopts Illinois' Administrative Review Law as part of its statutory framework, and "[w]here the statute creating or conferring power on an administrative agency expressly adopts the Administrative Review Law, a circuit court has no authority to entertain an independent action." *Id*. at 18 (citing *Metzger*, 209 Ill.2d at 42). Next, the court highlighted the fact that other sections in the ICAA expressly provide a private right of action, which evinces the legislature's intent not to imply a private right of action in § 9. *Id*. Finally, the court pointed to *People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill.2d 1 (1991),[2] where the Illinois Supreme Court suggested in dicta that no implied private right of action exists to enforce violations of the ICAA.

---

[2] In *Datacom*, the state alleged the defendant violated various ICAA provisions in the process of collecting on parking tickets. 146 Ill.2d at 9-10. On appeal, the defendant argued that the state did not have standing to prosecute civil damage suits under the ICAA for the benefit of private parties. *Id.* at 26. The Illinois Supreme Court agreed and noted that "only the Department [of Financial and Professional Regulation] had standing to pursue civil violations of the Collection Agency Act." *Id.*

7

Other courts in this district agree with the reasoning set forth in *Eul* and have also concluded that there is no private right of action under § 9 of the ICAA. *See Skinner v. LVNV Funding, LLC*, No. 16 C 7089, 2018 WL 319320, at *4 (N.D. Ill. Jan. 8, 2018) ("[W]e find the conclusion in *Eul*, which takes into account the state of contemporary Illinois law, carefully reasoned and persuasive, and find no implied private right of action under § 9 of the ICAA."); *Shekar v. Ocwen Loan Servs., LLC*, No. 18 C 3019, 2019 WL 5892574, at *3 (N.D. Ill. Nov. 12, 2019) ("The overwhelming majority of courts in this district have concluded that there is no private right of action under § 9 of the ICAA."); *Ali v. Portfolio Recovery Assocs., LLC*, No. 15 C 6178, 2018 WL 4760284, at *11 (N.D. Ill. Sept. 30, 2018) (finding that plaintiff could not prevail because there is no private right of action under § 9 of the ICAA); *Johnson v. Alltran Educ., LP*, No. 17 CV 6616, 2018 WL 2096374, at *10 (N.D. Ill. May 7, 2018) ("The Court is persuaded that the Illinois Supreme Court would not recognize a private cause of action under § 9.3 of the ICAA.").

Here, Defendants point to these cases and argues that the same statutory construction principles that were analyzed in *Eul* demonstrate that § 9 of the ICAA does not provide a private right of action. The Court finds that the conclusion in *Eul* is well-reasoned and persuasive; thus, no private right of action exists under § 9 of the ICAA. Accordingly, Plaintiff's ICAA claim is dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendants' partial motion to dismiss [17] is granted and Counts I (TILA), II (EOCA), and V (ICAA) of Plaintiff's amended complaint are dismissed.

**DATED**: May 23, 2024          **ENTERED**:

*LaShonda A. Hunt*

LaSHONDA A. HUNT
United States District Judge

9